Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Farooq Khan*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAROOQ KHAN, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | **DEMAND FOR JURY TRIAL** |
| CHARGEPOINT HOLDINGS, INC., PASQUALE ROMANO, and REX S. JACKSON, | |
| Defendants. | |

Plaintiff Farooq Khan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by ChargePoint Holdings, Inc. ("ChargePoint" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by ChargePoint; and (c) review of other publicly available information concerning ChargePoint.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired ChargePoint securities between June 1, 2023 and November 16, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      ChargePoint provides networked solutions for charging electric vehicles, including the ChargePoint cloud subscription platform and charging hardware. ChargePoint claims its goods and services are designed for an array of charging scenarios from home to workplace, parking, hospitality, retail and transport fleets of all types.

3.      On September 6, 2023, after the market closed, ChargePoint reported its second quarter fiscal year 2024 financial results, including an "$28.0 million, or 19 percentage point, inventory impairment charge." The Company stated the "inventory impairment charge was taken to address legacy supply chain-related costs and supply overruns on a particular DC product." As a result, the Company reported a second quarter GAAP gross margin of 1%, down from 17% in the prior year's same quarter.

4.      On this news, the Company's share price fell $0.77, or 11%, to close at $6.29 per share on September 7, 2023, on unusually heavy trading volume.

5.      Then, on November 16, 2023, after the market closed, ChargePoint released preliminary financial results for the third quarter of fiscal year 2024, which would include an

"additional non-cash inventory impairment charge" in the amount of $42 million "related to product transitions and to better align inventory with current demand." As a result, the Company expected to report "GAAP gross margin of negative 23% to negative 21%." The Company also reported revenue had fallen to "$108 million to $113 million, as compared to $150 to $165 million as previously expected." Moreover, ChargePoint's Chief Executive Officer and Chief Financial Officer were both replaced, effective immediately.

6.     On this news, the Company's share price fell $1.11, or 35%, to close at $2.02 per share on November 17, 2023, on unusually heavy trading volume.

7.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company was experiencing higher component costs and supply overruns for first generation DC charging products; (2) that, as a result, the Company was likely to incur impairment charges; (3) that, as a result of the foregoing, the Company's profitability would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein,

including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.    Plaintiff Farooq Khan, as set forth in the accompanying certification, incorporated by reference herein, purchased ChargePoint securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.    Defendant ChargePoint is incorporated under the laws of Delaware with its principal executive offices located in Campbell, California. ChargePoint's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "CHPT."

15.    Defendant Pasquale Romano ("Romano") was the Company's President and Chief Executive Officer ("CEO") at all relevant times.

16.    Defendant Rex S. Jackson ("Jackson") was the Company's Chief Financial Officer ("CFO") at all relevant times.

17.    Defendants Romano and Jackson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive

representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

### SUBSTANTIVE ALLEGATIONS

#### Background

18.      ChargePoint provides networked solutions for charging electric vehicles, including the ChargePoint cloud subscription platform and charging hardware. ChargePoint claims its goods and services are designed for an array of charging scenarios from home to workplace, parking, hospitality, retail and transport fleets of all types.

#### Materially False and Misleading

#### Statements Issued During the Class Period

19.      The Class Period begins on June 1, 2023.[1] On that day, ChargePoint issued a press release which announced its financial results for the first quarter of fiscal year 2024, ended April 30, 2023. The press release stated, in relevant part:

> "ChargePoint delivered strong results in the first quarter, growing at nearly 60% year-over-year. *We focused on delivering our broad portfolio of charging solutions across North America and Europe, while continuing to improve gross margins, and managing operating expenses,"* said Pasquale Romano, President and CEO of ChargePoint. "The positive first quarter results are a testament to the strength and diversity of our business. As the only charging network to operate across all verticals in North America and Europe, we believe we remain well positioned to take advantage of the inevitable long-term growth opportunity ahead."

> **First Quarter Fiscal 2024 Financial Overview**

> - **Revenue.** First quarter revenue was $130.0 million, up 59% from $81.6 million in the prior year's same quarter. Networked charging systems revenue for the first quarter was $98.3 million, up 65% from $59.6 million in the prior year's same quarter. Subscription revenue was $26.4 million, up 49% from $17.6 million in the prior year's same quarter.

> - **Gross Margin.** *First quarter GAAP gross margin was 23%, up from 15% in the prior year's same quarter.* First quarter non-GAAP gross margin, which primarily excludes stock-based compensation expense and amortization from acquired intangible assets, was 25%, up from 17% in the prior year's same quarter.

> - **Net Income/Loss.** First quarter GAAP net loss was $79.4 million, down from $89.3 million in the prior year's same quarter. Non-GAAP pre-tax net loss in the first quarter, which primarily excludes $24.0 million in stock-based

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

compensation expense, $3.0 million amortization expense from acquired intangible assets and other items, was $52.8 million as compared to $71.7 million in the prior year's same quarter. Non-GAAP Adjusted EBITDA Loss, which primarily excludes stock-based compensation expense, depreciation expense and amortization expense of acquired intangible assets, was $48.9 million in the first quarter, as compared to $67.1 million in the prior year's same quarter.

\* \* \*

**Second Quarter of Fiscal 2024 Guidance**

***For the second fiscal quarter ending July 31, 2023, ChargePoint expects revenue of $148 million to $158 million. At the midpoint, this represents an anticipated increase of 41% over the prior year's same quarter.***

20. On August 8, 2023, the Company filed its quarterly report for the period ended April 30, 2023 with the SEC on Form 10-Q (the "1Q24 10-Q"). The 1Q24 10-Q stated, in relevant part:

Gross profit increased during the three months ended April 30, 2023 compared to the three months ended April 30, 2022 primarily due to an increase in Networked Charging Systems sales that resulted from an increase in the number of Networked Charging Systems delivered and an increase in Subscriptions revenue.

Gross margin increased during the three months ended April 30, 2023 compared to the three months ended April 30, 2022 primarily due to efficiencies realized in managing cost of Networked Charging Systems.

1Q24 10-Q purported to warn:

Disruptions in the manufacturing, delivery and overall supply chain of vehicle manufacturers and suppliers have resulted in additional costs and, to a lesser extent, component shortages, and have led to fluctuations in EV sales in markets around the world. Increased demand for personal electronics and trade restrictions that affect raw materials have contributed to a shortfall of semiconductor chips, which has caused additional supply challenges both within and outside of ChargePoint's industry. Ongoing supply chain challenges, component shortages and heightened logistics costs have adversely affected ChargePoint's gross margins in recent quarters and ChargePoint expects that gross margins may continue to be adversely affected by increased material costs and freight and logistic expenses in the future.

21. The above statements identified in ¶¶ 19-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company was experiencing higher component costs and supply overruns for first generation DC charging products; (2) that, as a result, the Company was likely to incur impairment charges; (3) that, as a result of the foregoing, the Company's profitability would be adversely impacted; and (4) that, as a

result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

22.     The truth partially emerged on September 6, 2023. On that date, ChargePoint issued a press release which announced its financial results for the second quarter of fiscal year 2024 ended July 31, 2023, including a $28.0 million inventory impairment charge.  The press release stated, in relevant part:

> "In the second quarter, ChargePoint delivered solid growth. Our revenue of $150 million represents a 39% year-over-year increase despite a hesitant economy," said Pasquale Romano, President and CEO of ChargePoint. "In the quarter we fortified our access to working capital with a $150 million revolving credit facility and $38 million raised via our "at-the-market" offering. ***We took an inventory impairment charge to address a significant supply-chain related issue, and we announced an estimated $30 million in annualized operating expense savings from reorganizing the business for agility, efficiency and scale.*** We remain committed to delivering on our goal of generating positive non-GAAP adjusted EBITDA by the end of calendar 2024."

> **Second Quarter Fiscal 2024 Financial Overview**

> - Revenue. Second quarter revenue was $150.5 million, up 39% from $108.3 million in the prior year's same quarter. Networked charging systems revenue for the second quarter was $114.6 million, up 36% from $84.1 million in the prior year's same quarter. Subscription revenue was $30.0 million, up 48% from $20.2 million in the prior year's same quarter.

> - Gross Margin. ***Second quarter GAAP gross margin was 1%, down from 17% in the prior year's same quarter, and non-GAAP gross margin was 3%, down from 19% in the prior year's same quarter, in both cases primarily due to a $28.0 million, or 19 percentage point, inventory impairment charge. This inventory impairment charge was taken to address legacy supply chain-related costs and supply overruns on a particular DC product***.

> - Net Income/Loss. Second quarter GAAP net loss was $125.3 million, up from $92.7 million in the prior year's same quarter. Non-GAAP pre-tax net loss was $86.1 million as compared to $62.3 million in the prior year's same quarter***, both reflecting the $28.0 million inventory impairment charge. Non-GAAP Adjusted EBITDA Loss was $81.2 million also reflects this inventory impairment charge in the second quarter,*** as compared to $56.2 million in the prior year's same quarter.

> - Liquidity. As of July 31, 2023, cash on the balance sheet was $263.9 million, which includes $37.7 million of at-the-market share offering gross proceeds during the second quarter.

> - Shares Outstanding. As of July 31, 2023, the Company had approximately 360 million shares of common stock outstanding.

23.     On this news, the Company's share price fell $0.77, or 11%, to close at $6.29 per share on September 7, 2023, on unusually heavy trading volume.

24.     The September 6, 2023 press release further stated:

**Third Quarter, Fourth Quarter and Full Fiscal Year 2024 Guidanc**e

For the third fiscal quarter ending October 31, 2023, ChargePoint expects:

- ***Revenue of $150 million to $165 million. At the midpoint, this represents an anticipated increase of 26% as compared to the prior year.***

- ***Non-GAAP gross margin of 22 to 25%.***

- ***Non-GAAP operating expenses of $81 million to $84 million.***

For the fourth fiscal quarter ending January 31, 2024, ChargePoint expects non-GAAP operating expenses of $79 million to $82 million.

For the full fiscal year ending January 31, 2024, ChargePoint expects revenue of $605 million to $630 million. At the midpoint, this represents an anticipated increase of 32% as compared to the prior year.

25.     On September 6, 2023, the Company hosted a conference call in connection with the second quarter of fiscal year 2024 earnings. During the call, Defendant Jackson stated, in relevant part:

Turning to guidance. ***For the third quarter of fiscal 2023, we expect revenue to be $150 million to $165 million, up 26% year-on-year and up 5% sequentially at the midpoint.*** For the full fiscal year, we are guiding to $605 million to $630 million, up 32% year-on-year at the midpoint.

Regarding gross margin, ***for the third quarter, we expect to be between 22% and 25% on a non-GAAP basis as we work through the inventory levels discussed earlier. <u>With the inventory issue behind us</u> and aggressive programs for improving our cost structure on supply and manufacturing, we would expect to resume continued improvement in gross margin next year***.

26.     On September 11, 2023, the Company filed its quarterly report for the period ended July 31, 2023, with the SEC on Form 10-Q (the "2Q24 10-Q"). The 2Q24 10-Q stated, in relevant part:

***For the remainder of fiscal year 2024, ChargePoint expects revenue to grow in both Networked Charging Systems and subscriptions due to increased demand in EVs and the related charging infrastructure market***.

27.     The 2Q24 10-Q discussed inventory levels and stated in relevant part:

Inventory levels are analyzed periodically and written down to their net realizable value if they have become obsolete, have a cost basis in excess of expected net

realizable value or are in excess of expected demand. ***During the three months ended July 31, 2023, the Company recorded an impairment charge of $28.0 million, consisting of $15.0 million charge to write down the carrying value of certain inventory on hand, as well as $13.0 million charge for losses on non-cancelable purchase commitments for inventory to be received after July 31, 2023, to reduce the carrying value of certain DC fast charging products to their estimated net realizable value.*** The inventory impairment charge is included in the cost of revenue - networked charging systems in the condensed consolidated statements of operations.

28.     The 2Q24 10-Q purported to warn investors of risks related to inventory, and stated in relevant part:

> ChargePoint's revenue growth is directly tied to the number of passenger and commercial EVs sold, which it believes drives the demand for EV charging infrastructure. The market for EVs is still rapidly evolving and although demand for EVs has grown in recent years, there is no guarantee of such future demand.

*          *          *

> ***ChargePoint depends on the timely supply of materials, services and related products to meet the demands of its customers, which depends in part on the timely delivery of materials and services from suppliers and contract manufacturers. Significant or sudden increases in demand for EV charging stations, as well as worldwide*** demand for the raw materials and services that ChargePoint requires to manufacture and sell EV charging stations, including component parts, may result in a shortage of such materials or may cause shipment delays due to transportation interruptions or capacity constraints. Such shortages or delays could adversely impact ChargePoint's suppliers' ability to meet ChargePoint's demand requirements.

29.     The above statements identified in ¶¶ 22-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) higher component costs and supply overruns for first generation DC charging products; (2) that, as a result, the Company was likely to incur additional impairment charges; (3) that, as a result of the foregoing, the Company's profitability would be adversely impacted; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

30.     On November 16, 2023, after the market closed, ChargePoint released preliminary financial results for the third quarter of fiscal year 2024, revealing another $42 million inventory impairment charge. Specifically, the Company announced:

Our core markets of North America and Europe both came under pressure late in the third quarter, with ***revenue falling far short of expectations***. Overall macroeconomic conditions, along with fleet and commercial vehicle delivery delays impacted anticipated deployments with government, auto dealership and workplace customers." said Rick Wilmer, President and CEO of ChargePoint.

*         *         *

Over the past 18 months in his prior role as Chief Operating Officer, Wilmer has completed a thorough analysis of ChargePoint's supply chain, manufacturing partnerships and inventory management approach. "The ChargePoint board and I are committed to significantly improving operational execution to ensure that the Company is building a stronger, more resilient business for the benefit of all stakeholders. ***Our first steps are to take an additional non-cash inventory impairment charge related to product transitions and to better align inventory with current demand.*** We remain committed to our goal of generating positive adjusted EBITDA in the fourth quarter of calendar 2024," said Wilmer.

**Preliminary Third Quarter Fiscal Year 2024 Financial Performance**

- ***Revenue of $108 to $113 million, as compared to $150 to $165 million as previously expected***.

- ChargePoint expects to take a ***<u>non-cash impairment charge of $42 million resulting in GAAP gross margin of negative 23% to negative 21% and non-GAAP gross margin of negative 19% to negative 17%</u>***.

- ***Pre-impairment non-GAAP gross margin of 19% to 21%, as compared to 22% to 25% as previously expected***.

- ChargePoint expects GAAP operating expenses of $129 million to $131 million. Non-GAAP operating expenses of $80 million to $82 million, as compared to $81 million to $84 million as previously expected.

- As of October 31, 2023, cash, cash equivalents and restricted cash was approximately $397 million, which includes $232 million of at-the-market share offering gross proceeds, as previously announced on October 11, 2023.

- As of October 31, 2023, ChargePoint's $150 million revolving credit facility remains undrawn, and the Company has no drawn debt maturities until 2028.

31.     On that date, the Company also announced that it would be replacing both its President/Chief Executive Officer, Defendant Romano, and Chief Financial Officer, Defendant Jackson, effective immediately.

32.     On this news, the Company's share price fell $1.11, or 35%, to close at $2.02 per share on November 17, 2023, on unusually heavy trading volume.

1

**CLASS ACTION ALLEGATIONS**

2     33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

3 Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased

4 or otherwise acquired ChargePoint securities between June 1, 2023 and November 16, 2023,

5 inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants,

6 the officers and directors of the Company, at all relevant times, members of their immediate families

7 and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants

8 have or had a controlling interest.

9     34.     The members of the Class are so numerous that joinder of all members is

10 impracticable.  Throughout the Class Period, ChargePoint's shares actively traded on the NYSE.

11 While the exact number of Class members is unknown to Plaintiff at this time and can only be

12 ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or

13 thousands of members in the proposed Class.  Millions of ChargePoint shares were traded publicly

14 during the Class Period on the NYSE.  Record owners and other members of the Class may be

15 identified from records maintained by ChargePoint or its transfer agent and may be notified of the

16 pendency of this action by mail, using the form of notice similar to that customarily used in securities

17 class actions.

18     35.     Plaintiff's claims are typical of the claims of the members of the Class as all members

19 of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that

20 is complained of herein.

21     36.     Plaintiff will fairly and adequately protect the interests of the members of the Class

22 and has retained counsel competent and experienced in class and securities litigation.

23     37.     Common questions of law and fact exist as to all members of the Class and

24 predominate over any questions solely affecting individual members of the Class.  Among the

25 questions of law and fact common to the Class are:

26          (a)     whether the federal securities laws were violated by Defendants' acts as

27 alleged herein;

28

1    (b)    whether statements made by Defendants to the investing public during the

2  Class Period omitted and/or misrepresented material facts about the business, operations, and

3  prospects of ChargePoint; and

4    (c)    to what extent the members of the Class have sustained damages and the

5  proper measure of damages.

6    38.    A class action is superior to all other available methods for the fair and efficient

7  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

8  damages suffered by individual Class members may be relatively small, the expense and burden of

9  individual litigation makes it impossible for members of the Class to individually redress the wrongs

10  done to them.  There will be no difficulty in the management of this action as a class action.

11                    **UNDISCLOSED ADVERSE FACTS**

12    39.    The market for ChargePoint's securities was open, well-developed and efficient at

13  all relevant times.  As a result of these materially false and/or misleading statements, and/or failures

14  to disclose, ChargePoint's securities traded at artificially inflated prices during the Class Period.

15  Plaintiff and other members of the Class purchased or otherwise acquired ChargePoint's securities

16  relying upon the integrity of the market price of the Company's securities and market information

17  relating to ChargePoint, and have been damaged thereby.

18    40.    During the Class Period, Defendants materially misled the investing public, thereby

19  inflating the price of ChargePoint's securities, by publicly issuing false and/or misleading

20  statements and/or omitting to disclose material facts necessary to make Defendants' statements, as

21  set forth herein, not false and/or misleading.  The statements and omissions were materially false

22  and/or misleading because they failed to disclose material adverse information and/or

23  misrepresented the truth about ChargePoint's business, operations, and prospects as alleged herein.

24    41.    At all relevant times, the material misrepresentations and omissions particularized in

25  this Complaint directly or proximately caused or were a substantial contributing cause of the

26  damages sustained by Plaintiff and other members of the Class.  As described herein, during the

27  Class Period, Defendants made or caused to be made a series of materially false and/or misleading

28  statements about ChargePoint's financial well-being and prospects.  These material misstatements

1  and/or omissions had the cause and effect of creating in the market an unrealistically positive

2  assessment of the Company and its financial well-being and prospects, thus causing the Company's

3  securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false

4  and/or misleading statements during the Class Period resulted in Plaintiff and other members of the

5  Class purchasing the Company's securities at artificially inflated prices, thus causing the damages

6  complained of herein when the truth was revealed.

7                                                   **LOSS CAUSATION**

8          42.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused

9  the economic loss suffered by Plaintiff and the Class.

10         43.     During the Class Period, Plaintiff and the Class purchased ChargePoint's securities

11  at artificially inflated prices and were damaged thereby.  The price of the Company's securities

12  significantly declined when the misrepresentations made to the market, and/or the information

13  alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

14  causing investors' losses.

15                                            **SCIENTER ALLEGATIONS**

16         44.     As alleged herein, Defendants acted with scienter since Defendants knew that the

17  public documents and statements issued or disseminated in the name of the Company were

18  materially false and/or misleading; knew that such statements or documents would be issued or

19  disseminated to the investing public; and knowingly and substantially participated or acquiesced in

20  the issuance or dissemination of such statements or documents as primary violations of the federal

21  securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their

22  receipt of information reflecting the true facts regarding ChargePoint, their control over, and/or

23  receipt and/or modification of ChargePoint's allegedly materially misleading misstatements and/or

24  their associations with the Company which made them privy to confidential proprietary information

25  concerning ChargePoint, participated in the fraudulent scheme alleged herein.

26

27

28

1

2

### APPLICABILITY OF PRESUMPTION OF RELIANCE

### (FRAUD-ON-THE-MARKET DOCTRINE)

3      45.     The market for ChargePoint's securities was open, well-developed and efficient at

4   all relevant times.  As a result of the materially false and/or misleading statements and/or failures to

5   disclose, ChargePoint's securities traded at artificially inflated prices during the Class Period.  On

6   June 7, 2023, the Company's share price closed at a Class Period high of $9.78 per share.  Plaintiff

7   and other members of the Class purchased or otherwise acquired the Company's securities relying

8   upon the integrity of the market price of ChargePoint's securities and market information relating

9   to ChargePoint, and have been damaged thereby.

10     46.     During the Class Period, the artificial inflation of ChargePoint's shares was caused

11  by the material misrepresentations and/or omissions particularized in this Complaint causing the

12  damages sustained by Plaintiff and other members of the Class.  As described herein, during the

13  Class Period, Defendants made or caused to be made a series of materially false and/or misleading

14  statements about ChargePoint's business, prospects, and operations.  These material misstatements

15  and/or omissions created an unrealistically positive assessment of ChargePoint and its business,

16  operations, and prospects, thus causing the price of the Company's securities to be artificially

17  inflated at all relevant times, and when disclosed, negatively affected the value of the Company

18  shares.  Defendants' materially false and/or misleading statements during the Class Period resulted

19  in Plaintiff and other members of the Class purchasing the Company's securities at such artificially

20  inflated prices, and each of them has been damaged as a result.

21     47.     At all relevant times, the market for ChargePoint's securities was an efficient market

22  for the following reasons, among others:

23          (a)     ChargePoint shares met the requirements for listing, and was listed and

24  actively traded on the NYSE, a highly efficient and automated market;

25          (b)     As a regulated issuer, ChargePoint filed periodic public reports with the SEC

26  and/or the NYSE;

27          (c)     ChargePoint regularly communicated with public investors via established

28  market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)   ChargePoint was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

48.   As a result of the foregoing, the market for ChargePoint's securities promptly digested current information regarding ChargePoint from all publicly available sources and reflected such information in ChargePoint's share price. Under these circumstances, all purchasers of ChargePoint's securities during the Class Period suffered similar injury through their purchase of ChargePoint's securities at artificially inflated prices and a presumption of reliance applies.

49.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

50.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to

differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of ChargePoint who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase ChargePoint's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for ChargePoint's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about ChargePoint's financial well-being and prospects, as specified herein.

55.   Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of ChargePoint's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about ChargePoint and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.   Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing ChargePoint's financial well-being and prospects from the investing public

and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of ChargePoint's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired ChargePoint's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that ChargePoint was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their ChargePoint securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of ChargePoint within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, ChargePoint and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


DATED:  November 29, 2023                **GLANCY PRONGAY & MURRAY LLP**

                                        By:  *s/ Charles H. Linehan*
                                        _____
                                        Robert V. Prongay
                                        Charles H. Linehan
                                        Pavithra Rajesh
                                        1925 Century Park East, Suite 2100
                                        Los Angeles, California 90067
                                        Telephone: (310) 201-9150
                                        Facsimile: (310) 201-9160
                                        Email:  clinehan@glancylaw.com

                                        **THE LAW OFFICES OF FRANK R. CRUZ**
                                        Frank R. Cruz
                                        1999 Avenue of the Stars, Suite 1100
                                        Los Angeles, CA 90067
                                        Telephone: (310) 914-5007

                                        *Attorneys for Plaintiff Farooq Khan*

**SWORN CERTIFICATION OF PLAINTIFF**

**CHARGEPOINT HOLDINGS, INC. SECURITIES LITIGATION**

I, Farooq Khan, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase the ChargePoint Holdings, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in ChargePoint Holdings, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

| | |
|---|---|
| 11/24/2023 | |
| Date | Farooq Khan |

**Farooq Khan's Transactions in ChargePoint Holdings, Inc. (CHPT)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/9/2023 | Bought | 1,500 | $8.3200 |
| 6/9/2023 | Bought | 500 | $8.3299 |
| 6/23/2023 | Bought | 2,000 | $7.2700 |
| 6/27/2023 | Sold | -2,000 | $7.6600 |
| 7/14/2023 | Bought | 1,600 | $8.2650 |
| 7/14/2023 | Bought | 400 | $8.2699 |
| 7/17/2023 | Sold | -2,000 | $8.6900 |
| 7/19/2023 | Bought | 2,000 | $8.6600 |
| 7/20/2023 | Bought | 1,000 | $8.2700 |
| 7/20/2023 | Bought | 600 | $8.2950 |
| 7/20/2023 | Bought | 400 | $8.3000 |
| 7/25/2023 | Bought | 2,000 | $8.1900 |
| 7/28/2023 | Sold | -700 | $8.2550 |
| 7/28/2023 | Sold | -9,300 | $8.2500 |
| 8/1/2023 | Bought | 1,000 | $8.4000 |
| 8/2/2023 | Bought | 3,000 | $8.0300 |
| 8/10/2023 | Bought | 3,000 | $7.9100 |
| 8/15/2023 | Bought | 2,000 | $7.5800 |
| 8/16/2023 | Bought | 2,000 | $7.4100 |
| 9/7/2023 | Bought | 3,000 | $5.7700 |
| 10/11/2023 | Bought | 4,000 | $3.7800 |
| 10/20/2023 | Bought | 1,000 | $3.0400 |
| 10/20/2023 | Bought | 4,000 | $3.0498 |

**Perfapps Inc.'s Transactions in ChargePoint Holdings, Inc. (CHPT)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 8/10/2023 | Bought | 5,000 | $7.9200 |
| 10/20/2023 | Bought | 5,000 | $2.9899 |

# ASSIGNMENT AGREEMENT

This Assignment Agreement is made and entered into on __11/24/2023__ (the "Effective Date"), by and between Perfapps Inc. ("Assignor") and Farooq Khan ("Assignee") (collectively, the "Parties").

The Parties hereby agree as follows:

1. <u>Assignment</u>. Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all rights, title, ownership, and interest in claims, demands, and causes of action of any kind whatsoever that the Assignor has or may have arising from violations of the federal securities laws of the United States of America in connection with Assignor's purchase or acquisition of ChargePoint Holdings, Inc. securities. Furthermore, the Assignor hereby appoints the Assignee as his attorney-in-fact for the purpose of exercising all powers relating to such causes of action. Assignee agrees to remit any proceeds received as a result of this assignment to the Assignor.

2. <u>Acceptance</u>. As of the Effective Date, Assignee hereby accepts the foregoing assignment.

3. <u>Successors</u>. This assignment shall be binding upon and inure to the benefit of the Parties, their successors, and assigns.

**ASSIGNOR**:

_____     11/24/2023
Perfapps Inc.                          Date
By: Farooq Khan, Owner

**ASSIGNEE**:

_____     11/24/2023
Farooq Khan                          Date