1
2
3
4                          UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7    FAROOQ KHAN,                              Case Nos. 23-cv-06172-PCP,
                                               24-cv-00363-JSC (PCP)
8                    Plaintiff,

9           v.                                 **ORDER CONSOLIDATING CASES
                                               AND APPOINTING LEAD
10   CHARGEPOINT HOLDINGS, INC., et al.,       PLAINTIFFS AND LEAD COUNSEL**

11                   Defendants.               Re: Dkt. Nos. 21, 22, 40, 41

12   COLBY SMITH,

13                   Plaintiff,

14          v.

15   CHARGEPOINT HOLDINGS, INC., et al.,

16                   Defendants.

17

18                                **BACKGROUND**

19          Plaintiffs Farooq Khan and Colby Smith bring separate class action securities fraud

20   lawsuits against defendants ChargePoint Holdings, Inc., ChargePoint's CEO Pasquale Romano,

21   and ChargePoint's CFO Rex Jackson, alleging that the defendants made false and misleading

22   statements to investors who purchased ChargePoint's securities in violation of Sections 10(b) and

23   20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.[1] Khan's complaint

24   asserts a class period from June 1, 2023 to November 16, 2023, while Smith's complaint asserts a

25   longer class period from December 7, 2021 to November 16, 2023.

26
      _____
27   [1] Khan filed his lawsuit on November 29, 2023 and Smith filed his lawsuit on January 22, 2024.
     The *Khan* case was assigned to Judge P. Casey Pitts and the *Smith* case was initially assigned to
28   Judge Jacqueline Scott Corley. The two actions have since been related, and the *Smith* case was
     reassigned to Judge Pitts on May 9, 2024. Dkt. No. 86.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

ChargePoint provides networked solutions for charging electric vehicles, including a cloud subscription platform and charging hardware. Plaintiffs allege that Romano and Jackson made misleading statements that failed to disclose the company's higher component costs and supply overruns, which defendants purportedly knew were likely to result in inventory impairment charges that would adversely impact the company's profitability. For example, in September 2023, ChargePoint revealed a $28 million inventory impairment charge for Q2 '24, resulting in an 11% stock price decline. Thereafter, Jackson allegedly stated in a conference call that the "inventory issue [was] behind us." Dkt. No. 1, at 8. But in November 2023, ChargePoint announced another $42 million inventory impairment charge for Q3 '24, resulting in a 35% stock price decline.

On January 29, 2024, seven motions were filed to consolidate the *Khan* and *Smith* cases and to appoint lead plaintiff and lead counsel for the class action lawsuits. Dkt. Nos. 18, 21, 22, 26, 40, 41, 50. Movant Sudhakar Krishnan has since withdrawn his motion. Dkt. No. 59. And movant Randy Slipher has filed a non-opposition notice, Dkt. No. 58, as have movants Gary Naito and MD Nuruddin, Dkt. No. 60. This leaves four competing motions to appoint lead plaintiff and lead counsel—by movants Shahram and Paulina Afshani ("the Afshanis"), Gary Schneeweiss, Collin Sekas, and John Pignataro—for this Court's consideration. Dkt. Nos. 21, 22, 40, 41.

## LEGAL STANDARDS

"If actions before the court involve common questions of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). Districts courts have "broad discretion" under Rule 42(a) to consolidate cases pending in the same district. *Inv'r Res. Co. v. United States Dist. Ct. for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).

Under the Private Securities Litigation Reform Act (PSLRA), a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the "most adequate plaintiff" is the person who, "in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted with proof that the

1  most adequate plaintiff "will not fairly and adequately protect the class" or "is subject to unique

2  defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §

3  78u-4(a)(3)(B)(iii)(II). Once the determination of lead plaintiff is made, "[t]he most adequate

4  plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."

5  15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the

6  district court should generally defer to that choice." *Cohen v. United States Dist. Ct. for N. Dist. of*

7  *Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

## ANALYSIS

9  **I.    The Court Grants the Motions to Consolidate the *Khan* and *Smith* Actions.**

10      Because the *Khan* and *Smith* actions present the same questions of fact and law, the Court

11  grants the unopposed motions to consolidate the actions under Federal Rule of Civil Procedure

12  42(a). Plaintiffs Khan and Smith both assert identical causes of action against identical defendants

13  for the same purported misconduct; namely, that defendants made false and misleading statements

14  during the class period by failing to disclose inventory impairment charges material to

15  ChargePoint's profitability. The only significant difference between the two actions is the length

16  of the class period, with the period in *Smith* beginning in December 2021 rather than June 2023.

17  But given the virtually identical Section 10(b) and Section 20(a) securities fraud claims against

18  ChargePoint and its executives, this difference alone provides no reason to refrain from

19  consolidating the cases. The Court will therefore consolidate the two actions, which will proceed

20  under the *Khan* caption and case number going forward.

21  **II.    The Court Appoints the Afshanis as Lead Plaintiffs.**

22      **A.  The Afshanis Have the Largest Financial Interest.**

23      There is a rebuttable presumption in PSLRA cases that the movant with the "largest

24  financial interest" is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To make that

25  determination in this case, the Court must first resolve the two threshold questions: which class

26  period governs (*Smith* or *Khan*), and what approach should be used to calculate financial interest.

27      In general, when selecting which class period should be used to determine the most

28  adequate plaintiff, the longest relevant class period should govern, which here would be the *Smith*

United States District Court
Northern District of California

3

class period beginning in December 2021. *See Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs."). Of the four competing movants, only Mr. Sekas suggests that the shorter class period in *Khan*, which begins in June 2023, should govern. He argues that the Afshanis' law firm Hagens Berman Sobol Shapiro LLP (which represents the plaintiff in the later-filed *Smith* lawsuit) expanded the *Khan* class period backwards in *Smith* to accommodate the Afshanis, who purportedly did not purchase any shares in the *Khan* class period. Dkt. No. 62, at 8; *see Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *2 n.2 (N.D. Cal. Apr. 28 2016) ("There is a risk, however, to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest."). But the risk of unwarranted manipulation by the Afshanis' counsel is minimized by the fact that both Mr. Schneeweiss and Mr. Pignataro also propose using the longer class period in *Smith*, leaving Mr. Sekas as the lone outlier. *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) ("Indeed, it is unclear why a plaintiff would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only."). In support of his argument, Mr. Sekas contends that ChargePoint's misleading statements began in 2023, not in late 2021 as suggested in *Smith*. But the *Smith* complaint identifies allegedly misleading statements dating as far back as December 2021, undermining Mr. Sekas's argument that the class period in *Smith* was manipulated backwards from June 2023 solely to serve the Afshanis.

Accordingly, in line with the decisions of other courts in this District and nationwide, the Court will use the longer class period in *Smith* when evaluating the movants' financial interests. *See, e.g.*, *Eichenholtz*, 2008 WL 3925289, at *2 ("Though a shorter class period may simplify the litigation, no benefits accrue by shortening the class period at this stage in the litigation.").

As to the second threshold inquiry of what approach should be used to calculate the largest financial interest, Mr. Sekas proposes a "net shares" approach while the remaining movants propose a "net losses" approach. The net losses approach calculates how much *money* a movant

lost based on the reduction in share price during the class period, while the net shares approach calculates how many *shares* were retained by a movant at the end of the class period. *See, e.g.*, *In re Network Assocs., Inc.*, *Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (using the net shares approach to approximate potential recovery). The net shares approach, however, relies on the assumption that there was a constant fraud premium throughout the class period. *In re Network Assocs., Inc.*, *Sec. Litig.*, 76 F. Supp. 2d at 1027 (noting that the net shares approach "gets into trouble" if the fraud premium "varied over the course of the class period"). Here, there were at least two disclosures involving inventory impairment charges during the class period (in September 2023 and November 2023), undermining any assumption that the fraud premium was constant throughout the class period. *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("As many district courts have observed, net shares purchased and a 'retained shares' calculation are less useful analytical tools where gradual disclosures are involved, because those methods assume a constant 'fraud premium' throughout the class period."). Because this case involves gradual disclosures that undermine the likelihood of a constant fraud premium throughout the class period, the Court will use the net losses approach to calculate the movants' financial interests. *Peters v. Twist Bioscience Corp.*, 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023) (noting that "the approximate losses suffered during the Class Period [] is widely regarded as the factor commanding the most weight" in selecting a lead plaintiff).

Employing the net losses approach during the *Smith* class period, the Afshanis have the greatest financial interest and are therefore presumably the most adequate plaintiffs. The chart below shows the net financial loss for each movant during the *Smith* class period (unless noted otherwise).

| Movant | Financial Interest | Counsel |
|---|---|---|
| Shahram and Paulina Afshani | $1,759,765.60 | Hagens Berman Sobol Shapiro LLP |
| John Pignataro | ~$600,000 | Bleichmar Fonti & Auld LLP |
| Gary Schneeweiss | $400,734.56 | Glancy Prongay & Murray LLP |
| Collin Sekas | $354,779.23 (*Khan* class period) | Kahn Swick & Foti, LLC |

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.  The Afshanis Can Fairly and Adequately Represent the Class.**

The presumption that the movant with the largest financial interest should be appointed as lead plaintiff can be rebutted upon a showing that the presumptive lead plaintiff "will not fairly and adequately protect the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). While Mr. Schneeweiss and Mr. Pignataro attack the Afshanis in attempt to show that the Afshanis are incapable of adequately representing the class, their attacks are insufficient to overcome the rebuttable presumption favoring the Afshanis' selection as lead plaintiffs.

First, Mr. Schneeweiss argues that the claim by the Afshanis is atypical under Federal Rule of Civil Procedure 23(a) because the Afshanis made substantial options transactions during the class period, which allegedly makes the Afshanis subject to unique defenses and renders them incapable of adequately representing the class. *See Applestein v. Medivation Inc.*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("[B]ecause [movant] traded only in options, the court holds that [movant] should not be appointed lead [plaintiff]."). Specifically, Mr. Schneeweiss contends that only $254,323 of the Afshanis' total financial loss was from open market purchases of ChargePoint common stock, while the remaining $1,503,504 was from options trading. Dkt. No. 61, at 3. But unlike in *Applestein*, where the movant who was eliminated from consideration as lead plaintiff had *only* traded options, the Afshanis here made both options and common stock trades during the class period. This important distinction has been recognized by other courts in this District in selecting a lead plaintiff. *See, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569, at *3 (N.D. Cal. Dec. 17, 2018) (selecting a lead plaintiff who sustained losses primarily from trading options but also sustained losses from trading common stock). Additionally, the class definition expressly includes purchasers of "securities," which necessarily encompasses both options and common stock. Dkt. No. 67, at 7. Given their investment practices, the Afshanis appear well-situated to represent both kinds of investors.

The fact that a majority of the Afshanis' financial loss came from options transactions therefore does not disqualify them from adequately representing a class that includes both options and common stock purchasers.

Second, Mr. Pignataro alleges that Mr. Afshani has a history of fraudulent and deceptive conduct based on past litigation against him, which again purportedly makes him subject to unique defenses and thus unsuitable to represent the class. Dkt. No. 64, at 5. Mr. Pignataro references two prior lawsuits against Mr. Afshani—one brought by his sister and settled in 2013 that alleged a breach of fiduciary duties in connection with a real estate partnership, and another brought by two companies and dismissed by them in 2019 that alleged a breach of the duty of good faith and fair dealing in connection with a real estate transaction. *Id.* at 5–6. Mr. Pignataro's allegations are inadequate to establish that the Afshanis cannot adequately represent the class. Not only are his allegations of Mr. Afshani's prior conduct unsubstantiated and lacking in factual detail, but both cases also settled without any determination of Mr. Afshani's liability or wrongdoing. Moreover, as the Afshanis' counsel noted during the March 14, 2024 hearing on these motions, the Afshanis are sophisticated real estate investors, making it less noteworthy that they have been involved in prior litigation.

Accordingly, Mr. Pignataro's allegations fail to show that the Afshanis would not be able to fairly and adequately represent the class in this lawsuit.

In sum, the competing movants have not provided evidence sufficient to overcome the rebuttable presumption that the Afshanis are the most adequate plaintiffs here. The Court will therefore designate them as lead plaintiffs.

**C. Hagens Berman Is a Reasonable Choice for Class Counsel.**

Having been appointed lead plaintiffs, the Afshanis must "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Afshanis have selected Hagens Berman, which has significant prior experience representing plaintiffs in similar class action securities fraud lawsuits. Because the Afshanis have made a facially "reasonable choice of counsel" and no other party has suggested that choice is unreasonable, the Court will defer to the Afshanis' selection of counsel and appoint Hagens Berman as lead counsel. *Cohen*, 586 F.3d at 712.

### CONCLUSION

For the foregoing reasons, the Court consolidates the *Khan* and *Smith* actions and appoints the Afshanis as lead plaintiffs and Hagens Berman as lead counsel.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: May 16, 2024

_____

P. Casey Pitts
United States District Judge